## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

STUDENTS FOR JUSTICE IN PALESTINE AT THE
UNIVERSITY OF FLORIDA,

*Plaintiff*,

v.

RAYMOND RODRIGUES, in his official capacity as
Chancellor of the State University System of Florida;
RONALD DESANTIS, in his official capacity as the
Governor of Florida; BENJAMIN SASSE, in his official
capacity as University of Florida President; TIMOTHY
M. CERIO, MANNY DIAZ, JR., AUBREY EDGE,
PATRICIA FROST, EDWARD HADDOCK, JACK
HITCHCOCK, KEN JONES, DARLENE LUCCIO
JORDAN, BRIAN LAMB, ALAN LEVINE, CHARLES
H. LYDECKER, CRAIG MATEER, JOSE OLIVA,
AMANDA J. PHALIN, and ERIC SILAGY, in their
official capacities as members of the Florida Board of
Governors of the State University System; MORTEZA
HOSSEINI, DAVID L. BRANDON, RICHARD P.
COLE, CHRISTOPHER T. CORR, OLIVIA E. GREEN,
JAMES W. HEAVENER, DANIEL T. O'KEEFE,
RAHUL PATEL, MARSHA D. POWERS, FRED S.
RIDLEY, DANAYA C. WRIGHT, PATRICK O.
ZALUPSKI, and ANITA G. ZUCKER, in their official
capacities as members of the University of Florida Board
of Trustees,

*Defendants*.

Case No. 1:23-cv-275

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Students for Justice in Palestine at the University of Florida ("UF SJP") brings this First Amendment challenge to the Florida State University System's October 24, 2023 memorandum ("Deactivation Order" or "Order") ordering the deactivation of Students for Justice in Palestine ("SJP") chapters in the Florida State University System.

2.      The Deactivation Order is a Florida State University System directive promulgated by Chancellor Ray Rodrigues, in consultation with Governor Ron DeSantis, and subject to implementation by the University of Florida.

3.      The Deactivation Order advances unsubstantiated claims that Florida's SJP chapters have violated the state's material support for terrorism statute, Fla. Stat. § 775.33(3) (2019). The Order bases this serious and stigmatizing allegation solely on statements published by National Students for Justice in Palestine group ("NSJP"), an independent organization, in a document called the "Day of Resistance Toolkit."

4.      The Deactivation Order provides no basis for attributing the speech of NSJP to the Florida SJP chapters, including UF SJP. According to the Deactivation Order, UF SJP's only alleged offense is its affiliation with NSJP— which is constitutionally protected. UF SJP has no formal relationship with NSJP other than sharing the "Students for Justice in Palestine" name—a name that

affirms UF SJP's solidarity with Palestine, and with other SJP chapters throughout the country.

5.     Moreover, independent political advocacy—no matter its viewpoint—is fully protected by the First Amendment. Florida's material support statute recognizes as much by explicitly excluding independent advocacy from its ambit. Like the federal material support statute, Florida's law applies only to advocacy conducted in coordination with, or at the direction of, a designated foreign terrorist organization. But in alleging that NSJP's toolkit is evidence of material support, the Order does not cite any evidence of any such coordination or direction.

6.     "Nowhere is free speech more important than in our leading institutions of higher learning." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022). The Supreme Court has long recognized that "[t]he college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972). And the right of students to associate and speak through college organizations is a fundamental precursor to their political and ideological expression. As such, the Supreme Court has made clear that "[t]here can be no doubt that denial of official recognition, without justification, to college organizations burdens or abridges [their] associational right." *Id.* at 181.

7. In promulgating the Deactivation Order, Chancellor Rodrigues and Governor DeSantis violated that constitutional command. By ordering the deactivation of UF SJP on the basis of its constitutionally protected association with an independent group engaged in constitutionally protected speech, the Order stifles UF SJP's pro-Palestinian advocacy on campus at a time when the Palestine–Israel conflict is a matter of vital public discourse and concern.

8. If allowed to take effect, the Deactivation Order will deprive UF SJP and its members of the resources, platforms, and modes of recruitment that enable it to exist and engage in its mission.

9. Even before going into effect, the Deactivation Order has placed UF SJP's access to funding and resources in limbo, and deters current and prospective UF SJP members from participating in its activities for fear of becoming embroiled in a group subject to university sanctions. Instead of securely advancing its mission to advocate for the rights of Palestinians, UF SJP now finds its very existence in jeopardy.

10. The Deactivation Order is unconstitutional for two reasons. It violates UF SJP's First Amendment freedoms by punishing it for its protected speech and association, including its association with NSJP. And it runs afoul of the First Amendment's protection against viewpoint-based restrictions on speech and

association. For each of these reasons, the Court should declare that the Deactivation Order is unconstitutional, and enjoin it.

## PARTIES

11.     Plaintiff UF SJP is a student organization formally registered in accordance with University of Florida requirements. The organization's purpose is to engage in human rights advocacy and promote public awareness in its community for a just and reasonable solution to the Palestine–Israel conflict. While its members share certain common political viewpoints with NSJP and other SJP chapters around the country, UF SJP is a distinct organization with no formal relationship to NSJP or other SJP chapters. UF SJP is one of two SJP chapters referenced in the Deactivation Order instructing campuses in the Florida State University System to disband any student organization bearing the name "Students for Justice in Palestine."

12.     Defendant Raymond Rodrigues is the Chancellor of the State University System of the State of Florida. The Chancellor of the State University System is appointed by the Board of Governors, and has authority to promulgate the Board's System-wide policies. Defendant Rodrigues promulgated the Deactivation Order in conjunction with Governor Ron DeSantis. Defendant Rodrigues is sued in his official capacity as Chancellor of the State University System.

13.     Defendant Ronald DeSantis is the Governor of Florida. Defendant DeSantis promulgated the Deactivation Order in conjunction with Defendant Rodrigues and has claimed credit for it. Defendant DeSantis is sued in his official capacity as Governor of Florida.

14.     Defendant Benjamin Sasse is the President of the University of Florida. Under art. II, § 1 of the Constitution of the University of Florida, the President is "the chief executive officer of the University and shall exercise general supervision over all its activities." The Deactivation Order instructs Defendant Sasse to deactivate UF SJP. Defendant Sasse is sued in his official capacity as President of the University of Florida.

15.     Defendants Timothy M. Cerio, Manny Diaz, Jr., Aubrey Edge, Patricia Frost, Edward Haddock, Jack Hitchcock, Ken Jones, Brian Lamb, Darlene Luccio Jordan, Alan Levine, Charles H. Lydecker, Craig Mateer, Jose Oliva, Amanda J. Phalin, and Eric Silagy are sued in their official capacities as members of the Board of Governors of the State University System of Florida. The Board of Governors is the governing Body of the State University System, responsible for operating, regulating, and managing the public university system in Florida.

16.     Defendants Morteza Hosseini, David L. Brandon, Richard P. Cole, Christopher T. Corr, Olivia E. Green, James W. Heavener, Daniel T. O'Keefe, Rahul Patel, Marsha D. Powers, Fred S. Ridley, Danaya C. Wright, Patrick O.

Zalupski, and Anita G. Zucker are sued in their official capacities as members of the University of Florida Board of Trustees. The Board of Trustees is a corporate body established by Florida law that serves as the governing body of the University of Florida, which is part of the State University System of Florida. The members of the Board of Trustees set policy for the university and are responsible for implementing and maintaining high-quality education consistent with the University of Florida's mission.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983.

18.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 1391(e).

## FACTUAL ALLEGATIONS

### First Amendment-Protected Student Activism on College Campuses, Including the University of Florida

19.    Throughout American history, students have participated in and benefited from the marketplace of ideas on college campuses, particularly with respect to pressing and divisive social and political issues. The student-led Free Speech Movement, which arose on college campuses during the Civil Rights

Movement, drew nationwide attention and expanded alongside the movements to demand gender equality and to protest U.S. involvement in the Vietnam War.

20.     Particularly since World War II, the central role played by the U.S. government and American institutions on the world stage has led U.S-based student movements to regularly weigh in on matters of international concern. Student groups in the State of Florida are no exception. In the 1980s, for example, University of Florida student groups staged a 40-day sleep-in and protest on campus to express their opposition to apartheid in South Africa.

21.     Against this backdrop, the University of Florida has recognized the fundamental importance of the First Amendment on its campus. In 2019, the Florida College System Council of Presidents explained: "[I]t is not the proper role of our institutions to attempt to shield individuals from ideas and opinions they find unwelcome . . . . [C]oncerns about civility and mutual respect can never be used as a justification for closing off discussion of ideas, however offensive or disagreeable those ideas may be to some members of our communities."[1]

---

[1] Ava L. Parker, Chair, Fla. Coll. Sys. Council of Presidents, Statement on Free Expression (Apr. 12, 2019), https://www.flgov.com/wp-content/uploads/2019/04/FCS-COP-Statement-on-Freedom-of-Expression.pdf.

### <u>Benefits Available to Registered Student Organizations</u><br><u>at the University of Florida</u>

22.     The University of Florida allows students to create, formally register, and join student organizations, with over 1,000 student organizations currently operating on its campus.

23.     On campus, student organizations give students an opportunity to build community around shared interests in professional goals, religious and cultural beliefs, political and social activism, and sports. Recognizing that extracurricular involvement is essential to the University of Florida experience, the University actively encourages students to participate in registered student organizations.

24.     Once registered, student organizations and their members may access a variety of university resources exclusive to registered groups, including access to large meeting and event spaces, participation in campus-wide recruitment events, training and leadership development, and funding for activities.

25.     One such resource is the GatorConnect portal, an online platform where students may browse a current list of organizations and a calendar of past and upcoming events. Only registered student organizations may publish information on the GatorConnect portal, and the portal lists only events hosted by registered student organizations. To apply for permits needed to host large events on campus, registered student organizations must use the GatorConnect portal.

26.     These university-sponsored resources enable student organizations to support and grow their memberships, and to fulfill their organizational missions by hosting programming for the campus community.

### University of Florida Policies Regarding Student Organization Conduct and Deactivation

27.     The University of Florida has a number of policies that govern the conduct of student organizations on campus and the deactivation of those groups.

28.     University of Florida Policy Number 16-003 sets out requirements for registered student organizations. This policy empowers the University to take actions against student organizations that fail to comply with "any . . . University regulation or policy" including: "[s]uspension or restriction of student and/or organizational access to university benefits and/or resources," and "[d]enial and/or deactivation of registered student organization status (even if the organization was approved)."

29.     Student Honor Code and Student Conduct Code Regulation Number 4.040 stipulates that student organizations are required to abide by the Student Honor Code and the Student Conduct Code. The University is obligated to address any alleged violations of these codes "independently of any criminal or civil court process."

30.     Under the regulation, student organizations accused of violating the Code of Conduct are explicitly afforded procedural rights before they are punished

by the University. Among other rights, students and their organizations are entitled to: "[n]otice of Charges resulting from an alleged violation of the Student Honor Code or the Student Conduct Code;" "[a] Hearing to determine responsibility of any alleged violations of the Student Honor Code or the Student Conduct Code;" and an opportunity to "[a]ppeal a decision of a Hearing Body."

31.     Defendants have not alleged that UF SJP violated the Student Conduct Code, the Student Honor Code, or any other university regulations or policies.

32.     Defendants have not initiated any of the prescribed procedures to determine whether UF SJP should be subject to discipline.

## The University of Florida Students for Justice in Palestine Chapter

### The Formation, Mission, and Activism of UF SJP

33.     In 2001, Students at the University of California, Berkeley founded the first SJP chapter. Today, there are more than 200 SJP chapters nationwide.

34.     Since at least 2009, University of Florida students have maintained a UF SJP chapter in good standing with status as a registered student organization. Since then, UF SJP is and has been in good standing with all university requirements for registered student organizations.

35.     UF SJP was founded as a human rights advocacy organization in response to the failure of modern society to produce a just and reasonable solution

to the Palestine–Israel conflict. It aims to promote international law, human rights, and justice for all people affected by this conflict.

36.     UF SJP includes a diverse membership of people from all faiths and nationalities who believe in the attainability of peace. Its membership and activities change with each academic year. Currently, the chapter has four board members, and numerous active members.

37.     UF SJP engages in a wide range of campus advocacy in service of its mission. It has previously hosted teach-ins on the boycott, divest, and sanctions movement; vigils for Palestinians killed by the Israeli military; social events to celebrate Palestinian culture and food; and film festivals showcasing Palestinian voices and stories.

38.     The organization has also engaged in political and social advocacy on other significant public issues. It has issued statements in support of Black Lives Matter; boycotted the University food court for its association with prison labor contractors; and, together with other student organizations, protested Florida's "Don't Say Gay" Bill.

39.     The University of Florida's designated resources for registered student organizations are fundamental to UF SJP's operation, organizing, and existence on campus.

40.     Currently, UF SJP's sole source of funding is from the University's Student Government, which makes funding available only to registered student groups. Losing this funding would significantly undermine UF SJP's activism. The group would not be able to afford to invite speakers to campus, print promotional materials for events and recruitment, or provide food at events. For example, in March 2023, UF SJP hosted a Palestinian embroidery class, using school funds to purchase the necessary supplies for students in attendance and provide an honorarium for the event's speaker. Without university financial support, events like this would be difficult for UF SJP to mount.

41.     UF SJP regularly books on-campus meeting and event spaces, another privilege reserved for registered student organizations. Having these spaces is critical to building community and hosting events. Past UF SJP teach-ins and meetings have drawn more than one hundred students. Because its members do not have access to off-campus spaces of similar capacities, the only way for UF SJP to host such large gatherings is by booking university rooms.

42.     UF SJP utilizes GatorConnect features available only to registered student organizations to book spaces and to add its events to the University-wide calendar. The GatorConnect calendar is an effective way to reach students not already affiliated with UF SJP who are interested in learning more about the group's activism.

43.     UF SJP's organizing depends on university resources. Without these resources, the organization would be unable to effectively organize and fulfill its mission.

UF SJP's Loose and Informal Affiliation with NSJP

44.     NSJP was established in 2011, well after the creation of the first SJP chapter in Berkeley in 2001, and after the UF SJP chapter's own founding.

45.     NSJP "seeks to empower, unify, and support student organizers as they push forward demands for Palestinian liberation & self-determination on their campuses."[2]

46.     UF SJP is affiliated with, but fully autonomous from, both NSJP and other SJP chapters around the country. Article I of UF SJP's own Constitution states: "NSJP is not an umbrella organization of which we are a subordinate organization. Rather, NSJP serves as a coalition and networking group for SJPs and other like-minded groups on college campuses across the nation."

47.     UF SJP has no financial relationship with NSJP. It does not pay dues to NSJP, nor does it receive funds from NSJP.

48.     The vast majority of UF SJP's communication with NSJP has come through mass emails sent by NSJP to SJP chapters around the country.

---

[2] Nat'l Students for Just. in Palestine, https://nationalsjp.org (last visited Nov. 15, 2023).

49.     NSJP's mass communications to SJP chapters, including UF SJP, have largely concerned trainings, advocacy templates, and notices about annual conferences. UF SJP views NSJP's materials as a resource, and may sometimes use templates or consult educational materials, but NSJP's resources do not dictate the content or messaging of UF SJP's independent advocacy. UF SJP makes its own independent decisions about its views and advocacy.

50.     Ultimately, UF SJP's actions and principles are defined by the University of Florida students in their organization on their campus—and no one else.

UF SJP's Activism in Response to Current Events

51.     On October 7, 2023, Hamas launched an attack it called Operation al-Aqsa Flood on Israeli soil, killing approximately 1,200 people, the majority of whom were Israeli civilians and more than 30 of whom were children. Hamas also took approximately 240 civilian and Israeli military hostages.

52.     In response, the Israeli government launched an intense military operation in the Gaza Strip and a crackdown on Palestinians living in the West Bank. The Israeli military has dropped thousands of bombs in the Gaza Strip, severely limited humanitarian aid from entering the Strip, and at times imposed a communications blockade for Palestinians living there.

53.     The Israeli government's military response has killed more than 11,000 Palestinians in the Gaza Strip, the majority of whom are civilians and more than 4,600 of whom are children, and injured more than 28,000 people. The response has also caused the displacement of more than 1.7 million people.

54.     The humanitarian catastrophe in Gaza and the U.S. government's support for the Israeli government have triggered widespread protests and calls for a ceasefire around the world, including here in the United States. Students and student organizations, like UF SJP, are at the heart of this movement.

55.     UF SJP board members were devastated by both the tragedy in Israel and the Israeli government's response in Gaza. They were and are consumed by what the next days and weeks might hold for civilians, particularly Palestinian civilians in Gaza. Despite being overwhelmed, UF SJP felt that its campus activism was needed now more than ever, and it organized and mobilized quickly.

56.     On October 8, UF SJP board members convened to discuss how they could generate support for Palestinian human rights in Gaza. They considered hosting a teach-in to educate other students about the history of the Palestine–Israel conflict and UF SJP's criticisms of the Israeli government.

57.     On October 10, NSJP sent a mass email to SJP chapters around the country, including ours, with a link to a document called the "Day of Resistance Toolkit." The toolkit offered messaging resources and a guide to organizing in

light of the unfolding events in the region. UF SJP was not involved in or consulted about the conception or drafting of NSJP's toolkit.

58.     Also on October 10, UF SJP issued its own statement on its social media account "mourn[ing] the loss of innocent Palestinian and Israeli civilian life." The statement made clear that "the killing of any life is always undignified and heartbreaking," and asserted that "the root of violence, apartheid, and occupation under Israel's far-right government must end for peace." The statement concluded: "We hope that no more lives, Israeli or Palestinian, are lost. We pray for those who are suffering."

59.     Two days later, UF SJP organized a teach-in to spread awareness about the humanitarian crisis in Gaza and educate the student body on how to show support for Palestinian human rights. The teach-in had unprecedented attendance for a UF SJP event, with more than 200 students participating.

60.     Frustrated by what UF SJP believed was the University administration's disregard for the Palestinian civilian deaths in Gaza and the failure to support students perceived to be Palestinian and/or Muslim on campus, UF SJP, in conjunction with other student groups, issued another public statement on October 16. The statement stressed that "[v]iolence against all innocent life is unacceptable," and encouraged the University to "condemn[] all violence, antisemitism, Islamophobia, Palestinian erasure, and anti-Palestinian sentiment."

17

61.     On October 17, SJP issued a "call for action" on its social media account. It encouraged its followers continue to show solidarity with the people of Palestine: "organize," "educate," and "protest" to "END the gaza GENOCIDE."

**Chancellor Rodrigues' and Governor DeSantis' Order to Deactivate UF SJP**

62.     On October 24, 2023, Chancellor Ray Rodrigues sent a memorandum to State University System of Florida's Presidents ordering them to deactivate "active National SJP Chapters." While this Deactivation Order states that Chancellor Rodrigues issued it in "consultation with" Governor Ron DeSantis, the Governor's spokesperson told the Tampa Bay Times that it was issued at the Governor's direction.

63.     To justify deactivation, the Order links language from two different parts of NSJP's toolkit. In the first part, the toolkit refers to Operation Al-Aqsa Flood as "the resistance"; in the second, the toolkit states that "Palestinian students in exile are PART of this movement, not in solidarity with this movement."

64.     Based on those two statements, the Order concludes that "NSJP has affirmatively identified it is part of the Operation Al-Aqsa Flood—a terrorist led attack." That, the Order concludes, is evidence that NSJP has provided material support to a designated foreign terrorist organization, a felony violation of Florida Statute 775.33(3).

65.     Chancellor Rodrigues flagged that the "State University System of Florida has at least two institutions with" what he inaccurately characterized as "active National SJP Chapters." University of Florida is one of these institutions.

66.     The Deactivation Order does not allege that UF SJP was in any way involved in the drafting or circulation of NSJP's toolkit. Nor does it allege that UF SJP formally adopted or endorsed NSJP's toolkit.

67.     Similarly, the Deactivation Order does not include any direct statements or materials from UF SJP. Indeed, the Order does not mention UF SJP, except insofar as it notes that the chapter exists.

68.     Although the memorandum ordered State University of Florida System presidents to deactivate SJP chapters on their campuses, it does not identify any violation of any law or university policy by either of the SJP chapters subject to deactivation.

69.     The Order also does not cite any evidence to suggest that the statements contained in NSJP's toolkit were anything other than NSJP's own independent political advocacy.

70.     Nevertheless, the Order issued a clear directive: "[b]ased on" NSJP's "support of terrorism, in consultation with Governor DeSantis, the student chapters must be deactivated."

71.     The Deactivation Order referenced the possibility that student SJP chapters could "form another organization that complies with Florida state statutes and university policies," though it did not specify what measures newly formed organizations would need to take in order to comply.

72.     Two weeks later, while on stage for a G.O.P. presidential debate, Governor DeSantis celebrated and claimed credit for SJP deactivation in his state: "I already acted in Florida. We had a group Students for Justice in Palestine. They said they are common cause with Hamas. They said we're not just in solidarity. This is what we are. We deactivated them. We're not going to use state tax dollars to fund jihad, no way."

**The Deactivation Order's Harmful Consequences for UF SJP**

73.     The Deactivation Order, bearing the imprimatur of the State of Florida's highest executive and education officials, demands immediate disbandment of UF SJP and references a state felony statute. Once the Order has been carried out, UF SJP will cease to exist, and its members' First Amendment rights will have been irreparably infringed.

74.     Even now, the Deactivation Order casts a significant chill on UF SJP's activities, causing its Board and members to think twice before organizing and advocating for Palestine. The prospect of disbandment and potential investigation, including felony investigation, has cast a pall of uncertainty and

anxiety over current board members' efforts to put on new events and deterred prospective members from associating with UF SJP.

75.    The Deactivation Order leaves open the possibility that UF SJP and its members can avoid the harms of disbandment if they associate under a different name.

76.    On November 9, Chancellor Rodrigues publicly indicated that University officials will "seek an express affirmation" from local Students for Justice in Palestine chapters in Florida that "they reject violence," "reject they are a part of the Hamas movement," and "will follow the law."

77.    These ultimatums place UF SJP in an untenable position. UF SJP's constitution already makes its independent and lawful mission clear. It will in addition face government pressure to express a particular viewpoint in a particular way—by disavowing beliefs and associations it has never claimed to hold—to protect itself from the imminent threat of disbandment. Even if UF SJP were to comply with these demands, that would only open the door to further ultimatums constraining its constitutionally protected expression and association.

78.    Although UF SJP is still organizing for Palestinian rights, the looming threat of deactivation hampers its activism. UF SJP board members fear that at any moment the University will deny them access to critical school funds, resources,

and facilities that are fundamental to the survival and operation of their organization.

79.    Similarly, board members worry that derecognition will fundamentally disrupt their ability to sustain their growing momentum for their advocacy. Since October 7, UF SJP has gained 663 Instagram followers, with its advocacy statements now reaching over 9,000 accounts on Instagram. While the group's events typically drew 10 attendees, one recent event drew an overflowing crowd at a large lecture hall on campus. Without the ability to book campus facilities or communicate with their new supporters, UF SJP will not be able to retain or engage with this increasing support for Palestinian rights on campus.

80.    Ultimately, the Deactivation Order directly hampers UF SJP's ability to organize at a time when the group views it as critically necessary because the situation in Palestine is rapidly deteriorating. Rather than focusing on their advocacy, UF SJP students are forced to redirect time and resources towards vindicating their own constitutional rights.

**CAUSE OF ACTION**

**First Claim for Relief**
**42 U.S.C. § 1983 (First Amendment to the U. S. Constitution)**

81.    All students on public university campuses have the First Amendment right to speak and associate through the formation of student organizations.

82.     The First Amendment binds the State of Florida pursuant to the incorporation doctrine of the Fourteenth Amendment. In all of the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

83.     The Deactivation Order denies UF SJP members the right to collectively speak and associate.

84.     The Deactivation Order unconstitutionally censors and penalizes UF SJP on the basis of its First Amendment protected association with NSJP.

85.     The Deactivation Order unconstitutionally censors and penalizes UF SJP on the basis of the content and viewpoint of NSJP's speech.

86.     The Deactivation Order unconstitutionally censors and penalizes UF SJP on the basis of its imputed viewpoint. In particular, the Deactivation Order singles out SJP chapters in Florida for disbandment because of the views expressed in NSJP's toolkit.

87.     Viewpoint-based discrimination is presumptively unconstitutional in any setting. Its dangers are magnified in the university setting, because they interfere with long-recognized academic freedom principles.

88.     Even if the University of Florida's registered student organization system constitutes only a limited public forum, Defendants may not deny UF SJP

access to that forum on the basis of its viewpoint, its imputed viewpoint, or the viewpoint of its affiliates.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing facts and arguments, Plaintiff respectfully request that this Court:

A.  Issue preliminary and permanent injunctive relief restraining Defendant and its employees, agents, and successors in office from enforcing the Deactivation Order;

B.  Declare the Deactivation Order unconstitutional under the First Amendment to the United States Constitution;

C.  Award Plaintiff's costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1998; and

D.  Grant such additional relief as the interests of justice may require.

Dated: November 16, 2023

Respectfully submitted,

/s/ Daniel B. Tilley
Daniel B. Tilley (FBN 102882)
Jerry C. Edwards (FBN 1003437)
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel.: (786) 363-2714
dtilley@aclufl.org
jedwards@aclufl.org

Hina Shamsi*
Brian Hauss*
Brett Max Kaufman*
Shaiba Rather*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street
New York, NY 10004
Tel.: (212) 549-2500
hshamsi@aclu.org
bhauss@aclu.org
bkaufman@aclu.org
srather@aclu.org

Aamra Ahmad*
Tyler Takemoto*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
Tel.: (202) 457-0800
aahmad@aclu.org
ttakemoto@aclu.org

Radhika Sainath*
PALESTINE LEGAL
55 Exchange Pl.
New York, NY 10005
Tel.: (312) 212-0448
radhika@palestinelegal.org

*Pro hac vice application forthcoming

Counsel for Plaintiff