IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

|  |  |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT THE UNIVERSITY OF FLORIDA, *Plaintiff*, v. RAYMOND RODRIGUES, et al., *Defendants*. | Case No. 1:23-cv-275 |

## PLAINTIFF'S COMBINED REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION & OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Jerry C. Edwards (FBN 1003437)
Daniel B. Tilley (FBN 102882)
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel.: (786) 363-2714
jedwards@aclufl.org

Aamra Ahmad*
Tyler Takemoto*
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
 915 15th Street NW
Washington, DC 20005
Tel.: (202) 457-0800
aahmad@aclu.org

*Pro hac vice*

Hina Shamsi*
Brian Hauss*
Brett Max Kaufman*
Shaiba Rather*
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street
New York, NY 10004
Tel: (212) 549-2500
hshamsi@aclu.org

Radhika Sainath*
PALESTINE LEGAL
55 Exchange Pl. Suite 402
New York, NY 10005
Tel.: (312) 212-0448
radhika@palestinelegal.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

INTRODUCTION .................................................................................. 1

ARGUMENT......................................................................................... 4

   I.  UF SJP is substantially likely to succeed on the merits of its First Amendment claim................................................................................................ 4

      A.  UF SJP's claim is justiciable.......................................................... 5

         1.  UF SJP has standing ................................................................ 5

            a.  Injury in Fact ..................................................................... 5

            b.  Traceability & Redressability ............................................ 10

               i.  The University of Florida Defendants ............................ 10

               ii.  Chancellor Rodrigues & the Board of Governors .......... 11

               iii.  Governor DeSantis .................................................... 14

         2.  UF SJP's claim is ripe ............................................................ 19

      B.  The First Amendment Prohibits Defendants from Punishing UF SJP for the Statements Contained in NSJP's Toolkit ....................................... 20

        1.  UF SJP's Affiliation with NSJP Is Not a Legitimate Ground for Deactivation ........................................................................... 21

        2.  The BOG's Disagreement with the Views Expressed in NSJP's Toolkit Is Not a Legitimate Ground for Deactivation ............................. 25

        3.  The BOG's Attempt to Characterize the Deactivation Order as a Mere "Exhortation to Vigilance" Is Unfounded ....................................... 27

II. The Other Preliminary Injunction Factors Favor UF SJP ............................. 30

   A.  UF SJP Has Established Irreparable Harm ................................................. 30

   B.  The Balance of Harms and Public Interest Also Weigh in
      UF SJP's Favor ........................................................................................ 32

III. The Complaint Is Not a Shotgun Pleading ...................................................... 33

CONCLUSION....................................................................................................... 35

CERTIFICATE OF COMPLIANCE ....................................................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Abbot Labs. v. Gardner*,
387 U.S. 136 (1967) .................................................................................... 19

*ACLU of Minn. v. Tarek ibn Ziyad Acad.*,
788 F. Supp. 2d 950 (D. Minn. 2011) ......................................................... 14

*ACLU v. Fla. Bar*,
999 F.2d 1486 (11th Cir. 1993) ................................................................... 15

*American Federation of State, Cnty. and Mun. Employees Council 79 v. Scott*,
278 F.R.D. 664 (S.D. Fla., 2011) ................................................................... 9

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
77 F.3d 364 (11th Cir. 1996) ....................................................................... 32

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) .................................................................................... 30

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ............................................................... 10, 16, 17, 18

*Beaulieu v. City of Alabaster*,
454 F.3d 1219 (11th Cir. 2006) ................................................................... 19

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ..................................................................... 24

*Califano v. Sanders*,
430 U.S. 99 (1977) ...................................................................................... 19

*Chance v. Wakulla Cnty., Fla.*,
No. 18-cv-586, 2019 WL 13280167 (N.D. Fla. July 9, 2019) ................................. 33

*Christian Legal Soc'y v. Martinez*,
561 U.S. 661 (2010) ............................................................................... 20, 26

*Clapper v. Amnesty Int'l, Inc.*,
568 U.S. 398 (2013) ................................................................................ 7

*Club Madonna, Inc. v. City of Miami Beach*,
924 F.3d 1370 (11th Cir 2019) ............................................................... 19

*Cohen v. California*,
403 U.S. 15 (1971) ................................................................................. 26

*Cousins v. Sch. Bd. of Orange Cnty.*,
636 F. Supp. 3d 1360 (M.D. Fla. 2022) ................................................. 33

*Cunningham v. Fulton Cnty*,
No. 17-cv-5512, 2019 WL 162396 (N.D. Ga. Jan. 10, 2019) ................. 33

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) .................................................................. 31

*Digital Props., Inc. v. City of Plantation*,
121 F.3d 586 (11th Cir. 1997) ................................................................ 19

*Dream Defs. v. DeSantis*,
559 F. Supp. 3d 1238 (N.D. Fla. 2021) .......................................... 8, 18, 19

*Dream Defs. v. Governor, Fla.*,
57 F.4th 879 (11th Cir. 2023) ........................................................ 7, 12, 18

*Duke Power Co. v. Carolina Env'tl Study Grp.*,
438 U.S. 59 (1978) ................................................................................. 11

*Elrod v. Burns*,
427 U.S. 347 (1976) ............................................................................... 29

*Ex parte Young*,
209 U.S. 123 (1908) ..................................................................... 15, 16, 17

*Falls v. DeSantis*,
609 F. Supp. 3d 1273 (N.D. Fla. 2022) .................................................. 12

*Free Speech Coal., Inc. v. Colmenero*,
No. 23-cv-917, 2023 WL 5655712 (W.D. Tex. Aug. 31, 2023) ............................ 30

*Gay Lesbian Bisexual All. v. Pryor*,
110 F.3d 1543 (11th Cir. 1997) ....................................................... 20, 25

*Harrell v. Fla. Bar*,
608 F.3d 1241 (11th Cir. 2010) ......................................................... 7, 18

*Healy v. James*,
408 U.S. 169 (1972) .................................................................. *passim*

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ....................................................................... 8, 24

*Hulsey v. Pride Rests., LLC*,
367 F.3d 1238 (11th Cir. 2004) ............................................................ 33

*Jackson v. Bank of Am., N.A.*,
898 F.3d 1348 (11th Cir. 2018) ............................................................ 34

*Keeton v. Anderson-Wiley*,
664 F.3d 865 (11th Cir. 2011) ............................................................. 26

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) ...................................................................... 23

*KH Outdoor, LLC v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) ........................................................... 31

*Lamont v. Postmaster Gen.*,
381 U.S. 301 (1965) ...................................................................... 25

*Link v. Diaz*,
No. 21-cv-271, 2023 WL 2984726 (N.D. Fla. Apr. 17, 2023) ......................... 11, 13

*Luckey v. Harris*,
860 F.2d 1012 (11th Cir. 1988) ....................................................... 15, 16

*Made in the USA Found. v. United States*,
242 F.3d 1300 (11th Cir. 2001) ................................................................ 11

*Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs*,
650 F. Supp. 3d 690 (D. Minn. 2023) ................................................ 13, 18

*NFC Freedom, Inc. v. Diaz*,
No. 23-cv-360, 2023 WL 7283920 (N.D. Fla. Nov. 3, 2023) ................ 9, 10, 13, 30

*Okwedy v. Molinari*,
333 F.3d 339 (2d Cir. 2003) ................................................................... 10

*Osterback v. Scott*,
782 F. App'x 856 (11th Cir. 2019) ......................................................... 15

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*,
641 F. Supp. 3d 1218 (N.D. Fla. 2022) ........................................... *passim*

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ............................................................................... 29

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ............................................................................... 20

*Speech First, Inc. v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) .................................................... 9, 30, 31

*Steffel v. Thompson*,
415 U.S. 452 (1972) .............................................................................. 8, 9

*Summers v. Tice*,
199 P.2d 1, 3 (1948) ............................................................................... 13

*Summit Med. Assocs., P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999) ............................................................. 16

*Support Working Animals*,
8 F.4th 1198 (11th Cir. 2021) .......................................................... 13, 18

*Support Working Animals, Inc. v. DeSanti*s,
457 F. Supp. 3d 1193 (N.D. Fla. 2020) ................................................... 16

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).............................................................................. 7, 8, 19

*T.D.S. Inc. v. Shelby Mut. Ins. Co.*,
760 F.2d 1520 (11th Cir. 1985) ............................................................. 32

*United States v. Virginia*,
518 U. S. 515 (1996)............................................................................... 23

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ........................................................ 32, 33

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019) ........................................................ 11, 14

*Wollschlaeger v. Governor, Fla.*,
848 F.3d 1293 (11th Cir. 2017) .......................................................... 8, 18

**Statutes**

Fla. Stat. § 775.33 ................................................................................ 24

Fla. Stat. Sec. 1008.322 ........................................................................ 12

**Other Authorities**

Carl Sandburg, *The People, Yes* 181 (1936) ............................................. 1

Florida BOG Meeting, Fla. Channel (Nov. 9, 2023) ....................................*passim*

*Ron DeSantis: We Have "Deactivated" Florida Chapters of Students for Justice in
Palestine*, Fox News, at 1:45 (Oct. 28, 2023) ...................................... 14

**Rules**

Fed. R. Civ. P. 8(e)(2) ................................................................. 33

**INTRODUCTION**

"If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell." Carl Sandburg, *The People, Yes* 181 (1936). As both the law and the facts in this case favor Plaintiff, Defendants' briefs contain a considerable amount of table pounding. But Defendants' lengthy invocations of matters not before this Court should not distract from the straightforward First Amendment question presented by Plaintiff's Complaint and Motion for Preliminary Injunction. Namely, does the threatened deactivation of Students for Justice in Palestine at the University of Florida ("UF SJP"), on the basis of views espoused in the National Students for Justice in Palestine's ("NSJP") Day of Resistance toolkit, violate the First Amendment? As set forth in UF SJP's opening memorandum, the answer is indisputably "yes." More than half a century ago, *Healy v. James*, 408 U.S. 169 (1972), established that state university officials may not deny recognition to a student group because of its affiliations or its actual or imputed viewpoint.

Shorn of its rhetorical fleece, the Board of Governors' ("BOG") opposition to UF SJP's Motion for Preliminary Injunction contains two arguments.

*First*, the BOG argues that UF SJP's challenge to deactivation is not justiciable, largely because the BOG cannot *directly* deactivate UF SJP and because (according to the BOG) the Deactivation Order is not legally binding on

1

the University of Florida. BOG Prelim. Injunction Opp'n ("PI Opp.") 9, ECF No. 36. But this is a shell game. The BOG's characterization of the Deactivation Order as a mere "exhortation to vigilance by Florida's state universities," PI Opp. 21, contradicts the Order's plain text, which states "**Based on the National SJP's support of terrorism . . . the student chapters must be deactivated**," Deactivation Order 2, ECF No. 1-1 (emphasis in original). And it also conflicts with Chancellor Rodrigues's statement to the BOG that he "issued a memo directing the presidents of [the University of Florida and the University of South Florida] to deactivate the student registered organizations named 'Students for Justice in Palestine.'"[1]

Moreover, even if the Order is not formally binding on the University of Florida, it still gives rise to a credible threat of UF SJP's deactivation sufficient to establish standing and ripeness for pre-enforcement relief. That relief must at least extend to the University of Florida Board of Trustees and President Sasse, who have not opposed UF SJP's request for preliminary injunctive relief. It should also extend to the Board of Governors and Chancellor Rodrigues, who may otherwise exercise their oversight authority over the University of Florida to compel

---

[1] *See* Florida BOG Meeting, Fla. Channel, at 2:30:05–2:30:20 (Nov. 9, 2023), https://thefloridachannel.org/videos/11-9-23-florida-board-of-governors-meeting.

deactivation, as well as Governor DeSantis, who personally participated in, and took credit for, the Order's promulgation.[2]

Second, the BOG argues that the Deactivation Order is justified by the university system's interest in preventing "interference with the educational environment in the form of disruption, harassment, and of course illegal activities and violence." PI Opp. 5. But this is merely a post hoc justification. Both the Deactivation Order and Chancellor Rodrigues's November 9 remarks make clear that the Deactivation Order is based on the erroneous assertion that the views expressed in NSJP's toolkit constituted material support of terrorism. Unable to defend Chancellor Rodrigues's misinterpretation of Florida's material support statute, the BOG instead argues that the Deactivation Order was a reasonable response to fears of campus disruption based on NSJP's speech, its "nexus" to UF SJP, and the allegedly disruptive activities of other SJP groups. *Id.* at 25–28. But in *Healy* itself, the Supreme Court held that a student group could not be denied recognition because its national affiliate had advocated, and *other* local chapters had acted on, a philosophy of campus disruption. 408 U.S. at 170–71. The same holds true here.

---

[2] For similar reasons, Governor DeSantis's argument that he is protected by state sovereign immunity fails.

Finally, the BOG argues that the Complaint should be dismissed for violating the rule against shotgun pleadings. Defendants contend that the Complaint constitutes an impermissible shotgun because it includes multiple "First Amendment theories, combined under a single count." BOG Mot. to Dismiss ("BOG MTD") 4, ECF No. 37. However, both Federal Rule of Civil Procedure 8(e) and Eleventh Circuit precedent authorize the inclusion of multiple theories under a single claim, and the Complaint provides adequate notice about the nature of UF SJP's First Amendment claim.

Accordingly, the Court should grant UF SJP's Motion for Preliminary Injunction and deny Defendants' Motions to Dismiss.

## ARGUMENT

### I.  UF SJP is substantially likely to succeed on the merits of its First Amendment claim.

UF SJP is substantially likely to succeed on both jurisdictional and merits grounds. First, its claim is justiciable because it has standing against each of the named Defendants and the legal issues presented are ripe for resolution.[3] Second,

---

[3] Chancellor Rodrigues and Governor DeSantis have also moved to dismiss on the ground that they are redundant defendants, and Governor DeSantis has invoked sovereign immunity. BOG MTD 2–3; DeSantis Mot. To Dismiss ("DeSantis MTD") 4–8, 17–18, ECF No. 38. As discussed below, their direct participation in the Deactivation Order makes them proper defendants.

the Deactivation Order violates the First Amendment because it punishes UF SJP for its affiliation with NSJP and for the views espoused in NSJP's toolkit.

### A.   UF SJP's claim is justiciable.

#### 1.   UF SJP has standing.

To establish standing, a "plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling." *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1246 (N.D. Fla. 2022). Here, the BOG and Governor DeSantis primarily argue that UF SJP's injuries are not traceable to them, because the University of Florida has the authority to directly deactivate a student group. For the reasons discussed below, these arguments are mistaken. But even if they were correct, the Court should still issue a preliminary injunction prohibiting the University of Florida Defendants from deactivating UF SJP.[4]

#### a.   Injury in Fact

While Defendants seek to portray the Deactivation Order as unenforceable, the Order and Defendants' public statements—as well as their defense of the order on the merits—make clear that UF SJP faces a credible threat of deactivation. The

---

[4] Because UF SJP is substantially likely to establish standing and ripeness against each Defendant, it also satisfies the less onerous plausibility standard applicable to Defendants' Motions to Dismiss. *See Pernell*, 641 F. Supp. 3d at 1263 (recognizing that the standing analysis is "more forgiving [at the] motion-to-dismiss stage").

Order purports to direct the University of Florida to deactivate UF SJP pursuant to Florida's material support of terrorism statute. Two weeks after Chancellor Rodrigues issued the order, Governor DeSantis proclaimed to a national television audience that, in fact, he already *had* deactivated UF SJP, through the Order. Compl. ¶ 72, ECF No. 1. And shortly after that, Chancellor Rodrigues himself publicly outlined conditions that UF SJP would have to meet to avoid deactivation pursuant to the Order. *See* PI Mem. 9–10, ECF No. 3-1. Moreover, while Defendants point their fingers at one another in this litigation, none of them have withdrawn the Order, disavowed it or its allegations, or straightforwardly committed not to seek its enforcement against UF SJP. And now the BOG has defended the Order's constitutionality on the merits.[5]

The BOG argues that UF SJP has not alleged a sufficient injury in fact, because the Order "is not formal Board action, has no independent legal effect, and cannot be enforced against Plaintiff." PI Opp. 9. But UF SJP does not simply challenge the Order as a standalone document. Instead, by seeking to "restrain[] Defendant[s] . . . from enforcing the . . . Order," UF SJP necessarily seeks to bar Defendants from deactivating it on the unlawful basis laid out in the Order. *See*

---

[5] Both Chancellor Rodrigues, who is the Chief Executive Officer of the BOG, and Governor DeSantis join the BOG's response to the preliminary injunction motion. PI Opp. 1 n.1. President Sasse and the University of Florida's Board of Trustees have declined to respond to the preliminary injunction motion.

Compl. ¶¶ 24, 39–43 (discussing harms to Plaintiff that would flow from deactivation); SJP Decl. ¶¶ 18–21, ECF No. 1-4; *see also* PI Opp. 9 (stating that "[d]eactivation is the cornerstone of Plaintiff's Complaint."). Even if the Order does not *itself* formally deactivate UF SJP, it still gives rise to a First Amendment injury—a test the Eleventh Circuit applies "loosely where First Amendment rights are involved." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010).

First, the Order creates a credible threat of deactivation by the University of Florida. *See Dream Defs. v. Governor, Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) ("'A threat of future injury is sufficient to establish standing when the threatened injury is certainly impending *or there is a substantial risk that the harm will occur*.'" (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))).[6] The Order's specific and mandatory command, its invocation of Florida's material support of terrorism statute, and the BOG's oversight authority over state universities, Fla. Stat. § 1008.322, all point to a credible threat of

---

[6] Defendants invoke the Supreme Court's decision in *Clapper v. Amnesty Int'l, Inc.*, 568 U.S. 398, 409 (2013), to argue that the threatened injury to UF SJP is not sufficiently imminent to establish standing. PI Opp. 12. But as the Eleventh Circuit, following the Supreme Court, has recognized, a substantial risk that a First Amendment harm will occur satisfies *Clapper*. *See Dream Defs.*, 57 F.4th at 887 (citing *Susan B. Anthony List*, 573 U.S. at 158); *see also id.* at 888 ("Unlike the plaintiffs in *Clapper*, the plaintiffs' members' fears do not depend upon . . . speculation that, in enforcing the law against third parties, the government would end up harming the members. Instead, the members fear that the government will enforce the riot statute directly against them.").

deactivation. *See Pernell*, 641 F. Supp. 3d at 1255 ("Universities are required to implement regulations barring promotion of . . . prohibited viewpoints, and enforcement is all but ensured with the threat of financial ruin."); *Steffel v. Thompson*, 415 U.S. 452, 459 (1972) (holding that plaintiff had standing where police officers warned him he would likely be prosecuted if he continued to engage in handbilling).

While the University of Florida has not yet taken up the Order's directive, it also has not disavowed any intent to deactivate Plaintiff. *See Holder v. Humanitarian Law Project* ("*HLP*"), 561 U.S. 1, 15 (2010) (holding that the government's refusal to disavow prosecution supports standing).[7] And the other Defendants have argued that the Order's "endors[ement of] deactivation of Florida's two SJP chapters . . . was a reasonable reaction that does not run afoul of the First Amendment." PI Opp. 5; *see Pernell*, 641 F. Supp. 3d at 1255 (holding that the government's defense of a statute implies an intent to enforce it) (quoting *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc)).

---

[7] Chancellor Rodrigues said in his November 9 remarks that "the universities have not deactivated their university chapters of Students for Justice in Palestine." *Supra* n.1 at 2:31:40–2:31:47. He did not say that the universities *will not* deactivate the student chapters. Nor would such mid-litigation assurances alleviate UF SJP's injuries. *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1263 (N.D. Fla. 2021).

The Order, and Defendants' public defenses of it, have "warned" and "threatened" UF SJP with deactivation, *Susan B. Anthony List*, 573 U.S. at 159 (discussing *Steffel*), and UF SJP has affirmed its commitment to the affiliation upon which the Order bases its sanction, SJP Decl. ¶ 22. In these circumstances, the threat of deactivation is not remotely "chimerical." *Steffel*, 415 U.S. at 459 (cleaned up). The First Amendment does not require UF SJP to wait until after deactivation has occurred to challenge its constitutionality. *See, e.g.*, *NFC Freedom, Inc. v. Diaz*, Case No. 23-cv-360, 2023 WL 7283920, at *4 (N.D. Fla. Nov. 3, 2023) ("Consistent with governing law, this Court categorically rejects the notion that punishment must occur before a plaintiff may challenge state action."); *American Federation of State, Cnty. and Mun. Employees Council 79 v. Scott*, 278 F.R.D. 664, 669 (S.D. Fla., 2011) ("[R]andom drug-testing for state employees is the intended outcome of the policy, and thus not a remote, hypothetical possibility.").

Second, the Order's threat of deactivation for material support of terrorism *currently* chills UF SJP's expressive and associational activities, both by making the group's status uncertain and by making current and potential members fearful. *See* PI Mem. 10–11; SJP Decl. ¶¶ 41, 43. This objective chilling effect is a present injury sufficient to establish standing, regardless of whether the Order formally requires the University of Florida to impose sanctions. *See Speech First, Inc. v.*

*Cartwright*, 32 F.4th 1110, 1123 (11th Cir. 2022) ("Neither formal punishment nor the formal power to impose it is strictly necessary to exert an impermissible chill on First Amendment rights—indirect pressure may suffice." (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); and *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003))); *accord NFC Freedom, Inc.*, 2023 WL 7283920, at *3.

### b.   Traceability & Redressability

The threat of deactivation is directly traceable to Defendants, and an injunction would redress Plaintiff's injury. Collectively, Defendants treat the Order as a hot potato—but all of them bear responsibility for it, and at a minimum at least *one of them* does. *Cf. Summers v. Tice*, 199 P.2d 1, 3 (1948) (recognizing "the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each [defendant] did, when it is certain that between them they did all").

### i.   The University of Florida Defendants

No one in this litigation disputes that Plaintiff's First Amendment injuries are traceable to the University of Florida Defendants—UF President Benjamin Sasse and members of the UF Board of Trustees—or that an injunction barring those Defendants from deactivating UF SJP would at least partially redress those injuries. The Order instructs the UF Defendants to deactivate UF SJP, and they have direct enforcement authority over UF SJP. Compl. ¶¶ 14, 16, 28–30; *see* PI

Opp. 10, 14 (agreeing that UF has authority to deactivate UF SJP); *accord* BOG MTD 2 n.1. While they are not the only Defendants to whom the Order and its harms are traceable, they are certainly the most direct. *See, e.g.*, *Link v. Diaz*, No. 21-cv-271, 2023 WL 2984726, at *5 (N.D. Fla. Apr. 17, 2023) (recognizing that plaintiffs would likely have had standing against university board of trustees charged with enforcing challenged statute, even if they lacked standing against other defendants).

The UF Defendants maintain that they are "secondary defendants" in this matter and elected not to take any position on Plaintiff's motion for a preliminary injunction. Joint Proposed Briefing Sched., ECF No. 24. There is no question that an injunction against the UF Defendants would prevent deactivation and its resulting harms to UF SJP, and would also help alleviate the current chill on UF SJP's expressive and associational activities.

###             ii.        Chancellor Rodrigues & the Board of Governors

Plaintiff's injuries are also directly traceable to Chancellor Rodrigues and the Board of Governors, and an injunction prohibiting them from compelling or otherwise inducing UF SJP's deactivation would at least partially redress those

injuries.[8] While Chancellor Rodrigues may lack "independent statutory enforcement authority" separate from the BOG as a body, PI Opp. 14, he signed and issued the Order in his official capacity as the BOG's "Chief Executive Officer," *id.* at 1. Moreover, as the BOG acknowledges, it has oversight authority over the University, including the authority to ensure compliance with (its view of) state laws like the material support of terrorism statute, as well as BOG rules and regulations, through the withholding of government funds. *See* Fla. Stat. Sec. 1008.322; PI Opp. 15. The BOG's lack of direct authority over student groups is irrelevant in light of its supervisory authority over universities.

Plaintiff has come to this Court seeking an injunction precisely because the Chancellor's Order invokes the BOG's oversight authority to command UF SJP's deactivation. With respect to both the Chancellor and the BOG, this is not a case in which Plaintiff is asking "the Court to stack multiple layers of inferences" and make "too many inferential leaps to establish standing at the preliminary stage." *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1283 (N.D. Fla. 2022) (cited at PI Opp. 15). The BOG has the power to compel the University of Florida to deactivate UF

---

[8] A plaintiff need not demonstrate anything "more than . . . a substantial likelihood" of redressability. *Duke Power Co. v. Carolina Env'tl Study Grp.*, 438 U.S. 59, 79 (1978). And "even partial relief suffices for redressability." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019) (discussing *Made in the USA Found. v. United States*, 242 F.3d 1300, 1310 (11th Cir. 2001)).

SJP, and the Chancellor signed his name in use of that power in the Order. That is sufficient to establish standing against them both. *Compare Pernell*, 641 F. Supp. 3d at 1280 (injury traceable to the BOG where the BOG promulgated a regulation requiring state universities to pass corresponding enforcement regulations), *and Dream Defs.*, 57 F.4th at 889 (holding that plaintiffs had standing against Governor DeSantis where he could compel sheriffs to enforce Florida's anti-riot act), *with Link*, 2023 WL 2984726, at *5 (plaintiffs lacked standing against the BOG where there was no evidence BOG required colleges to implement or enforce state law regarding the recording of lectures, and there was no evidence the BOG had targeted any individual teachers), *and NFC Freedom, Inc.*, 2023 WL 7283920, at *7 (noting the absence of "evidence linking the Board members' intentions to reach through to individual professors through coercive regulations"), *and Support Working Animals*, 8 F.4th 1198, 1204 (11th Cir. 2021) ("[T]he core defect in [plaintiffs] position is that they can't show that they've been threatened with prosecution for violating § 32 by either the Attorney General or anyone under her control").

Chancellor Rodrigues alternatively argues that suing him in his official capacity is redundant of suing the members of the BOG. BOG MTD 2–3. But Chancellor Rodrigues promulgated the Order in his capacity as the BOG's Chief Executive Officer. His individual involvement makes UF SJP's claim against him

distinct from its claim against the other members of the BOG. *See, e.g.*, *Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs*, 650 F. Supp. 3d 690, 708–10 (D. Minn. 2023) (holding that two county officials were not redundant in suit for declaratory and injunctive brought against them and the county because, regardless of the county's liability for their actions, the plaintiffs alleged that the two officials directly contributed to the alleged injuries) (citing *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 958 (D. Minn. 2011)).

### iii.      Governor DeSantis

Finally, Plaintiff's First Amendment injuries are also traceable to Governor DeSantis, and an injunction prohibiting the Order's further implementation would at least partially redress those injuries. The Governor was personally involved in the promulgation of the Order, Deactivation Order 2, and has publicly expressed a personal commitment to the unconstitutional rationale upon which it is based.[9] An injunction prohibiting the Governor from taking further steps to implement the Deactivation Order—including through public threats of deactivation or private application of pressure on university officials—would help ameliorate the threat to

---

[9] *See Ron DeSantis: We Have "Deactivated" Florida Chapters of Students for Justice in Palestine*, Fox News, at 1:45 (Oct. 28, 2023), https://www.foxnews.com/video/6340070868112 ("DeSantis Video").

UF SJP's First Amendment rights. *See, e.g.*, *Wilding*, 941 F.3d at 1127 (even partial redressability is sufficient for standing).

Governor DeSantis claims that he has sovereign immunity against UF SJP's claim because his relationship to the Order is no "more than figurative," as he is not "legally responsible" for it and has "no . . . authority" over the BOG. DeSantis MTD 5.[10] It is, at least, ironic that the highest-ranking official in the state has claimed responsibility and taken credit for something he now, in this Court, protests he has no authority to do. But the fact that Governor DeSantis cannot personally deactivate UF SJP without others' cooperation does not mean he is immune from this suit.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that "a suit against an officer of a state directing him to refrain from unconstitutional conduct is not a suit against a state within the meaning of the eleventh amendment." *Luckey v. Harris*, 860 F.2d 1012, 1014 (11th Cir. 1988). To benefit from this exception to state sovereign immunity, a litigant must bring their case "against the state official or agency responsible for enforcing the allegedly unconstitutional scheme." *ACLU v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993); *accord Osterback v. Scott*, 782 F. App'x 856, 858–59 (11th Cir. 2019). The Eleventh Circuit has explained that, to

---

[10] The analyses for sovereign immunity, traceability, and redressability in this context are overlapping. *See* DeSantis MTD 9.

satisfy this requirement, a defendant must have "'some connection' with the unconstitutional act or conduct complained of." *Luckey*, 860 F.2d at 1015–16 (discussing *Ex parte Young*, 209 U.S. at 157).

As the Governor acknowledges, "Plaintiffs bringing suit under *Ex parte Young* typically challenge the constitutionality of state statutes." DeSantis MTD 4. And the cases upon which the Governor relies all come from that context, in which "some connection" typically means "authority to enforce the challenged statute." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1342 (11th Cir. 1999). The rule prevents plaintiffs from "choosing whichever state official appears most convenient and haling them into federal court." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1208 (N.D. Fla. 2020).

But this is not such a case. The Order is not a state statute whose enforcement threatens UF SJP's constitutional rights; rather, it is a directive to violate UF SJP's First Amendment rights, complete with an explicit (and bogus) rationale. And the Order expressly states that it was issued "in consultation with Gov. DeSantis," Deactivation Order 2, who publicly claimed credit for deactivating UF SJP, *see* DeSantis Video, *supra* n.9. When it comes to the *Ex parte Young* exception to state sovereign immunity, "[a]ll that is required is that the official be responsible for the challenged action." *Luckey*, 860 F.2d at 1015. The Governor is

not a merely convenient defendant, but a central one—and one who directly "contribute[d] to" Plaintiff's "alleged harm." DeSantis MTD 12.

Far more apt is the Supreme Court's decision in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). There, publishers challenged on First Amendment grounds the actions of the Rhode Island Commission to Encourage Morality in Youth, a body tasked by state statute with "educat[ing] the public concerning" any publications "containing obscene, indecent or impure language." *Id.* at 59 (cleaned up). The Commission did not possess any formal authority to "regulate or suppress obscenity," but rather only had the power to "exhorts booksellers and advise[] them of their legal rights." *Id.* at 66. Even so, the Supreme Court held that the Commission's "informal sanctions," together with its "deliberate[]" efforts to "achieve the suppression of publications deemed 'objectionable,'" "sufficiently inhibit[ed] the circulation of publications to warrant injunctive relief." *Id.* at 67. Further, the Court made clear that state sovereign immunity did not bar the publishers' suit, because the Commission's informal authority still amounted to "regulation by the State of Rhode Island," and its "acts and practices directly and designedly" suppressed speech. *Id.* at 68 (citing *Ex parte Young*).[11]

---

[11] The *Bantam* Court also observed that "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around . . . ." 372 U.S. at 68. Here, the Deactivation Order raises the

The Governor's participation in promulgating the Order in this case is a comparably informal, but substantial, effort to chill Plaintiff's protected speech. He cannot avoid responsibility for an Order to which he is directly tied by pointing elsewhere. State sovereign immunity was never meant to protect a state official from having to defend an unconstitutional action in which they personally took part.

Finally, for similar reasons, the Governor is not a redundant Defendant. In stark contrast to the cases on which he relies, the Governor here was personally involved in the action central to Plaintiff's Complaint, and his direct participation in the unlawful activity makes him a proper defendant. *See Mille Lacs Band of Ojibwe*, 650 F. Supp. 3d at 708–10. Moreover, while the Governor argues that Plaintiff could obtain complete relief through an injunction against other Defendants, DeSantis MTD 17, his public statements about deactivation raise the prospect that he might continue to threaten deactivation and to pressure other Defendants to follow through on his threats. Injunctive relief against the Governor is warranted to prevent those actions. *See Bantam Books*, 372 U.S. at 66–68.

---

spectre of criminal prosecution for material support of terrorism. Deactivation Order 2.

### 2.     UF SJP's claim is ripe.

"Courts apply the ripeness doctrine 'most permissively'"—that is, in favor

of justiciability—"in the First Amendment context." *Dream Defs*, 559 F. Supp. 3d

at 1265 (quoting *Harrell*, 608 F.3d at 1258)), *question certified on other grounds*,

57 F.4th 879 (11th Cir. 2023). "For pre-enforcement challenges, 'Article III

standing and ripeness issues . . . boil down to the same questions.'" 559 F. Supp. 3d

at 1265 (omission in original) (quoting *Wollschlaeger*, 848 F.3d at 1304)); *accord*

*Support Working Animals*, 8 F.4th at 1202 n.2.

The BOG argues that adjudicating Plaintiff's claim "depends on future

contingencies" and requires "[f]urther factual development." PI Opp. 18–19. But

whether Defendants may deactivate UF SJP on the basis of statements contained in

NSJP's toolkit—as specified in the Deactivation Order—is a legal question that is

concrete and at issue right now. *See, e.g., Susan B. Anthony List*, 573 U.S. at 167;

*Dream Defs.*, 559 F. Supp. 3d at 1265. This case does not involve an "abstract

disagreement" as to which this Court should be wary of premature involvement.

*Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (cited at PI Opp. 19), *abrogated*

*on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977). And it is a far cry

from a case involving "informal representations" that "were not memorialized," PI

Opp. 20 (discussing *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 588–

590 (11th Cir. 1997)), or a "verbal statement … or written notation," *Beaulieu v.*

*City of Alabaster*, 454 F.3d 1219, 1230 (11th Cir. 2006) (also discussing *Digital Props.*). Instead, it involves a "clear" and "written notice of violation," *id.*, signed by the Chancellor and directed at the University of Florida, expressly stating that UF SJP "must be deactivated" and memorializing why, Deactivation Order 2.

Moreover, in considering ripeness arguments, courts must evaluate "the hardship to the parties of withholding court consideration." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir 2019); *see also, e.g.*, *Susan B. Anthony List*, 573 U.S. at 167–68. Here, waiting will impose a hardship upon UF SJP and its members, whose speech and association rights continue to be chilled by the Deactivation Order. *See* PI Mem. 27–28. The Court can and should adjudicate whether the Order's grounds for deactivation are constitutional right now.

## B. The First Amendment Prohibits Defendants from Punishing UF SJP for the Statements Contained in NSJP's Toolkit.

The BOG does not dispute that the University of Florida's registered student organization program constitutes at least a limited public forum under the First Amendment. *See* PI Opp. 22; *see also Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 683 (2010). Restrictions on access to a limited public forum must be both reasonable and viewpoint neutral. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *accord, e.g.*, *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543 (11th Cir. 1997).

The Deactivation Order's directive to disband UF SJP because of the views expressed in NSJP's "Day of Resistance" toolkit—specifically, what Chancellor Rodrigues characterized as NSJP's "support for terrorism"—is neither reasonable nor viewpoint neutral. It unconstitutionally penalizes UF SJP because of its affiliation with NSJP, and because Defendants disagree with the views expressed by NSJP. The BOG does not argue here that NSJP's toolkit statements constituted material support for terrorism. Instead, it concocts a new justification for UF SJP's deactivation, now asserting that UF SJP's "nexus" with NSJP, and its receipt of the NSJP toolkit statements, gave rise to a reasonable fear of material disruption sufficient to justify deactivation. PI Opp. 25–28, 32. Deactivation on these grounds would be equally unconstitutional.[12]

### 1.    UF SJP's Affiliation with NSJP Is Not a Legitimate Ground for Deactivation.

The Supreme Court "has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization." *Healy*, 408 U.S. at 185–86. In *Healy*, the Court found it "clear that the relationship" between the local SDS

---

[12] The Deactivation Order quotes from NSJP's "Day of Resistance Toolkit," ECF No. 36-29. Defendants also refer to another NSJP document, the "National Week of Action for Palestine," ECF No. 36-30, as a "toolkit," though that document is not referenced in the Deactivation Order. All references in this memorandum to the NSJP toolkit are to the Day of Resistance Toolkit, except where otherwise stated.

chapter and National SDS "was not an adequate ground for the denial of recognition" to the local chapter—even though National SDS had allegedly espoused a "philosophy of violence and disruption," *id.* at 187—because the local chapter had stated that it was "not under the dictates of any National organization," *id.* at 173. Likewise here, UF SJP's Constitution affirms its independence from NSJP. *See* SJP Decl. ¶ 22.[13] UF SJP's constitutionally protected affiliation with other SJP groups, including NSJP, is therefore not a legitimate basis for deactivating UF SJP. *See* PI Mem. 16–18.

The BOG maintains that it does not seek to impose "guilt by association alone." PI Opp. 32. But the Deactivation Order tells a different story. It states: "The State University System of Florida has at least two institutions with active National SJP Chapters. These chapters exist under the headship of the National Students for Justice in Palestine, who distributed a toolkit identifying themselves as part of the Operation Al Aqsa Flood. **Based on the National SJP's support of terrorism, in consultation with Governor DeSantis, the student chapters must be deactivated.**" Deactivation Order 2 (emphasis in original). And Chancellor Rodrigues declared that he issued the Deactivation Order "because the actions of

---

[13] Chancellor Rodrigues acknowledged UF SJP's independence in his remarks to the Board of Governors. *See* Florida BOG Meeting, *supra* n.1, at 2:31:06–2:31:38.

the National Students for Justice in Palestine violated our state's anti-terrorism statute, and therefore we felt no chapter operating under their charter or headship or control should be active on our campuses here in Florida." *See* Florida BOG Meeting, *supra* n.1, at 2:30:36–2:30:57. Indeed, Chancellor Rodrigues never asserted any purported wrongdoing by UF SJP at all.

The BOG does not here argue that UF SJP must be deactivated because the NSJP toolkit statements constitute material support for terrorism. Seeking to justify the Order on entirely new grounds, the BOG contends that UF SJP's "nexus" with NSJP, PI Opp. 27, including its receipt of documents from NSJP "encouraging disruption on Florida campuses and openly claiming solidarity with Operation Al-Aqsa Flood," creates a reasonable apprehension of campus disruption sufficient to justify UF SJP's deactivation, *see id.* at 31–32 (attempting to distinguish *Healy* on this ground). It also points out that other universities have suspended their SJP chapters for alleged disruption. *Id.* at 28. This post hoc justification cannot justify the infringement of UF SJP's First Amendment rights. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (citing *United States v. Virginia*, 518 U. S. 515, 533 (1996)).

23

Even if the BOG's new rationale were properly before this Court, it would merely be guilt-by-association in another guise.[14] *Healy* rejected the notion that a substantial risk of campus disruption can be inferred from a local student group's affiliation with a national group, even if the national group espouses a "philosophy of violence and destruction," 408 U.S. at 187, and even if that philosophy has led *other* chapters to engage in "disruptive and violent campus activity," *id.* at 185.[15] The fact that the BOG continues to cite UF SJP's affiliations as a justification for deactivation, however, shows that injunctive relief is necessary to protect UF SJP's First Amendment rights. *See Pernell*, 641 F. Supp. 3d at 1255.

---

[14] The BOG's brief cites a slew of exhibits that reinforce impermissible guilt by association. 22 exhibits specific to UF SJP are cited for a proposition that is not in dispute: UF SJP has a loose—First Amendment-protected—affiliation with NSJP (and other pro-Palestinian advocacy groups). *See* ECF No. 35, Exs. 3, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 33, 37, 38. Of these, 11 relate to UF SJP's First Amendment-protected participation in a nationwide protest (Exs. 5, 6, 9, 10, 12, 16, 17, 19, 21, 30, 37); three concern UF SJP's First Amendment-protected sign-on to a statement criticizing a presidential executive order (Exs. 11, 14, 18); and one addresses a First Amendment-protected protest organized by UF SJP (Ex. 4). Defendants do not identify any findings, or even allegations, of actual misconduct by UF SJP.

[15] By contrast, the Court suggested that a student group's refusal to "affirm in advance its willingness to adhere to reasonable campus law" would constitute a reasonable basis for denying recognition. *Healy*, 408 U.S. at 193–94. Here, no Defendant has even alleged that UF SJP has refused to adhere to University of Florida rules and regulations.

### 2. The BOG's Disagreement with the Views Expressed in NSJP's Toolkit Is Not a Legitimate Ground for Deactivation.

The Deactivation Order also unconstitutionally penalizes UF SJP for the views expressed in the NSJP toolkit. The Order alleges that the NSJP toolkit statements violated Florida's material support of terrorism statute by (in the Chancellor's view) "identifying [NSJP] as part of the Operation Al Aqsa Flood." Deactivation Order 2. But as UF SJP pointed out in its opening memorandum, there is no evidence that NSJP coordinated the toolkit statements with a designated foreign terrorist organization. PI Mem. 21–23. Absent such coordination, NSJP's statements cannot constitute material support. *See HLP*, 561 U.S. at 24–25, 39; *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1026 (7th Cir. 2002); *see also* Fla. Stat. § 775.33(5)(b). The BOG does not argue otherwise, nor does it assert that the statements contained in NSJP's toolkit fall under any recognized First Amendment exception.

The views espoused NSJP's toolkit statements are therefore protected speech. Neither NSJP nor its affiliates can be punished for those views. *See Healy*, 408 U.S. at 187 ("The mere disagreement of the President with [the National SDS's] philosophy affords no reason to deny it recognition. As repugnant as these views may have been . . . the mere expression of them would not justify the denial of First Amendment rights. Whether [the local SDS chapter] did in fact advocate a philosophy of 'destruction' thus becomes immaterial."); *see also Gay Lesbian*

25

*Bisexual All.*, 110 F.3d at 1548–1550. The BOG asserts that *Healy* is distinguishable, and deactivation is justified, because UF SJP received NSJP "documents . . . encouraging disruption on Florida campuses and openly claiming solidarity with Operation Al-Aqsa Flood." PI Opp. 32. But this distinction does not affect the First Amendment analysis. UF SJP cannot be deactivated merely because it received NSJP's protected speech, and certainly not because Defendants disapprove of the views expressed. *See Pernell*, 641 F. Supp. 3d at 1244 (discussing the First Amendment right to receive speech (citing *Lamont v. Postmaster Gen.*, 381 U.S. 301, 308 (1965)).[16]

The BOG alternatively contends that the Deactivation Order is not viewpoint discriminatory, because Florida's material support statute, and the BOG's post hoc justifications regarding university codes of conduct and student safety, are not "unconstitutional viewpoint-based restriction[s]." PI Opp. 30. But the Deactivation Order's *application* of those authorities to penalize UF SJP—on the ground that, in Defendants' view, NSJP's speech expressed support for terrorism—is viewpoint discriminatory.

*Cohen v. California* is on point. There, the Supreme Court held that California's content-neutral breach of the peace statute was content discriminatory

---

[16] The BOG's attempts to distinguish *Healy* on justiciability grounds, PI Opp. 32, are equally unpersuasive. *See supra* Section I.A.

as applied to the defendant's "Fuck the Draft" jacket because his "conviction quite clearly rest[ed] upon the asserted offensiveness of the words [he] used to convey his message to the public." 403 U.S. 15, 18 (1971). The Court further noted that California "certainly lacks power to punish Cohen for the underlying content of the message the inscription conveyed," because applying the breach of the peace statute to anti-draft messages would have been viewpoint discriminatory. *Id.* Here, too, the Deactivation Order's application of the material support statute is based wholly on the message conveyed in NSJP's toolkit. This is not a case involving "a viewpoint-based objection" to a viewpoint neutral ethics code or anti-discrimination policy, *Keeton v. Anderson-Wiley*, 664 F.3d 865, 875 (11th Cir. 2011) (citing *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 695–96 (2010)), but rather an attempt to punish a student group because Defendants condemn the protected speech of its affiliate.

### 3. The BOG's Attempt to Characterize the Deactivation Order as a Mere "Exhortation to Vigilance" Is Unfounded.

Unable to defend the Deactivation Order as written, the BOG instead recasts the Order as an "open letter," PI Opp. 21, that "exhorted universities to follow their existing legal obligations to ensure SJP chapters do not engage in the unlawful tactics that the national SJP encouraged them to deploy, or in other conduct that would violate university policies or state law," *id.* at 31. This characterization of the Deactivation Order is baseless. The Order is addressed to the presidents of the

Florida state university system, not the general public. Deactivation Order 2. Its subject line reads "Deactivation of National Students for Justice in Palestine." *Id.* The key provision states "**Based on the National SJP's support of terrorism . . . the student chapters must be deactivated.**" *Id.* (emphasis in original). And the Order further provides that the "chapters may form another organization that complies with Florida state statutes and university policies," reflecting that the asserted violation hinges solely on the groups' constitutionally protected affiliation with NSJP. *Id.*

Chancellor Rodrigues's November 9 remarks to the Board of Governors further confirm that the Deactivation Order commands UF SJP's deactivation because of its affiliation with NSJP and the views expressed in NSJP's toolkit. He said: "On October 24, in consultation with Gov. DeSantis, I issued a memo *directing* the presidents of those institutions to deactivate the student registered organizations named 'Students for Justice in Palestine.'" Florida BOG Meeting, *supra* n.1, at 2:30:05–2:30:20 (emphasis added). He explained that he issued this directive because he believes that the NSJP toolkit "promotes supporting a terrorist organization," *id.* at 2:30:27–31, in violation of Florida's "anti-terrorism statute," 2:30:42–2:30:45, and that "no chapter operating under [NSJP's] charter or headship or control" should be active at Florida state universities, *id.* at 2:30:45–2:30:57. And he added that he "encouraged the presidents to facilitate the

28

reconstitution of [the Florida SJP chapters], either under a new charter with a different organization or a new name that was compliant with our state laws." *Id.* at 2:30:20–2:30:35. These statements belie Defendants' characterization of the Deactivation Order as a mere "exhortation to vigilance by Florida's state universities." PI Opp. 21.

While Chancellor Rodrigues acknowledged that "the universities have not deactivated their university chapters of Students for Justice in Palestine," due to "concerns about potential personal liability for university actors who deactivate the student registered organization," Florida BOG Meeting, *supra* n.1, at 2:31:40–2:32:04, he noted that "the Board [of Governors] is seeking our own outside legal counsel on this matter," *id.* at 2:32:35–2:32:42. And he explained that "we are working with the two universities to seek an express affirmation from their campus chapters of Students for Justice in Palestine," including affirmation that the chapters "reject violence" and "reject they are part of the Hamas movement." *Id.* at 2:32:45–2:33:05. These compelled disavowals would also violate the First Amendment. PI Mem. 23–26. More to the point, the Chancellor's remarks show that Defendants continue to target UF SJP on the unconstitutional basis laid out in the Deactivation Order.

## II.    The Other Preliminary Injunction Factors Favor UF SJP.

### A.    UF SJP Has Established Irreparable Harm.

The BOG does not dispute that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Nor does it dispute that deactivation itself would amount to irreparable injury. Instead, it argues that the threat of deactivation is not sufficiently "imminent" to establish irreparable harm. PI Opp. 31–32. This argument fails for at least two reasons.

First, as discussed in Section I.A.1 above, the threat of deactivation here is far from speculative. The Deactivation Order directs university presidents to disband SJP chapters, and although President Sasse and the University of Florida have not yet complied, their hesitation is no guarantee of future conduct. UF SJP cannot be forced to wait until the axe has fallen to obtain injunctive relief against the Deactivation Order. *See, e.g.*, *NFC Freedom, Inc.*, 2023 WL 7283920, at *4 (collecting cases); *Free Speech Coal., Inc. v. Colmenero*, No. 23-cv-917, 2023 WL 5655712, at *28 (W.D. Tex. Aug. 31, 2023) ("Because the threat of enforcement is real and imminent, Plaintiffs' harm is non-speculative. It is axiomatic that a plaintiff need not wait for actual prosecution to seek a pre-enforcement challenge." (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).

Second, the Deactivation Order—which wrongly asserts that UF SJP is complicit in the violation of Florida's material support of terrorism statute, a felony under state law—is *already* chilling UF SJP's expressive and associational activities. Although UF SJP continues to organize and advocate for Palestinian rights, "multiple current and potential members of UF SJP are afraid of being punished or investigated by the University or law enforcement because of their participation in [the] group." SJP Decl. ¶ 43. And UF SJP's board members fear that at any moment university officials could implement the Deactivation Order and disrupt the group's access to essential resources. *Id.* ¶ 41.

This chilling effect—which is based on a credible threat that the Deactivation Order will be enforced against UF SJP—is currently causing irreparable harm to UF SJP's First Amendment rights. *See Speech First*, 32 F.4th at 1120 (holding that the "objective chill" caused by a credible threat of enforcement is a discrete harm independent of actual enforcement, and collecting cases); *id.* at 1128 (holding that the plaintiff organization had undoubtedly established irreparable harm based on objective chill of its members' speech); *see also, e.g.*, *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("This chill on [plaintiff's] free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm.").

31

**B.    The Balance of Harms and Public Interest Also Weigh in UF SJP's Favor.**

The BOG does not dispute that the balance of harms and the public interest generally favor the vindication of constitutional rights. *See, e.g.*, *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272–73 (11th Cir. 2006). Rather, it argues that injunctive relief *against the BOG* would not redress UF SJP's injuries, because the BOG lacks the power to directly deactivate student groups. As discussed in Section I.A.1.b.ii, injunctive relief would appropriately prevent the BOG from exercising its authority over University of Florida officials to induce or compel them to deactivate UF SJP pursuant to the Deactivation Order. *See Pernell*, 641 F. Supp. 3d at 1288. And injunctive relief against Governor DeSantis would similarly prevent him from informally pressuring University of Florida officials to implement the Order.

The BOG alternatively argues that "an injunction directing the Board to refrain from exercising its authority in the future in a manner that violates the First Amendment is a speculative and impermissible obey-the-law injunction that redresses no injury." PI Opp. 34. But UF SJP does not seek a generic injunction requiring BOG to "obey the law." It seeks an injunction prohibiting BOG and other Defendants from enforcing the Deactivation Order, which the BOG (tellingly) insists *does not violate* the law. An injunction prohibiting Defendants from carrying out the Deactivation Order would be neither speculative nor generic.

### III.   The Complaint Is Not a Shotgun Pleading.

The BOG, joined by Governor DeSantis, argues in its Motion to Dismiss that the Complaint should be dismissed because it violates the rule against shotgun pleadings. BOG MTD 3–6. Federal Rules of Civil Procedure 8(a)(2) and 10(b) "require the pleader to present his claims discretely and succinctly." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (emphasis in original) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996)).

Here, the BOG argues that the Complaint combines multiple "First Amendment theories" under a single count. BOG MTD 4. But while the Eleventh Circuit has disapproved complaints that "commit[] the sin of not separating into a different count each cause of action or claim for relief," *Weiland*, 792 F.3d at 1323, it does not require a plaintiff to separate into a different count each theory for relief under a given claim. *See Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) ("While it may well be preferable to plead different theories of recovery in separate counts, it is not required."); *Chance v. Wakulla Cnty., Fla.*, No. 18-cv-

586, 2019 WL 13280167, at *1 (N.D. Fla. July 9, 2019); *see also* Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.").

The Complaint also gives adequate notice of UF SJP's claims, as evidenced by the BOG's response to the Motion for Preliminary Injunction. Unlike the cases on which Defendants rely, the Complaint here clearly identifies the First Amendment claim common to all Defendants, as well as the factual allegations on which that claim rests. *Cf. Cousins v. Sch. Bd. of Orange Cnty.*, 636 F. Supp. 3d 1360, 1373 (M.D. Fla. 2022) (complaint "fail[ed] to specify what provision or provisions of the law Plaintiffs are challenging under each First Amendment theory"); *Cunningham v. Fulton Cnty*, No. 17-cv-5512, 2019 WL 162396, at *4 (N.D. Ga. Jan. 10, 2019) (court could not ascertain "what speech Plaintiff claims is constitutionally protected," "what demotion or discharge occurred because Plaintiff allegedly spoke on a matter of public concern," or how many times her rights were allegedly violated). There is no basis to dismiss UF SJP's claim on this ground.[17]

---

[17] If the Court concludes that the Complaint violates the shotgun pleading rule, however, UF SJP respectfully requests leave to amend the Complaint to cure any deficiencies. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018).

## CONCLUSION

For the foregoing reasons, the Court should grant UF SJP's Motion for

Preliminary Injunction and deny Defendants' Motions to Dismiss.

Dated: January 12, 2024                Respectfully submitted,

/s/ Jerry C. Edwards                   Hina Shamsi*
Jerry C. Edwards (FBN 1003437)         Brian Hauss*
Daniel B. Tilley (FBN 102882)          Brett Max Kaufman*
AMERICAN CIVIL LIBERTIES               Shaiba Rather*
   UNION FOUNDATION OF FLORIDA         AMERICAN CIVIL LIBERTIES
4343 West Flagler Street, Suite 400        UNION FOUNDATION
Miami, FL 33134                        125 Broad Street
Tel.: (786) 363-2714                   New York, NY 10004
jedwards@aclufl.org                    Tel.: (212) 549-2500
                                       hshamsi@aclu.org

Aamra Ahmad*
Tyler Takemoto*                        Radhika Sainath*
AMERICAN CIVIL LIBERTIES               PALESTINE LEGAL
   UNION FOUNDATION                    55 Exchange Pl. Suite 402
 915 15th Street NW                    New York, NY 10005
Washington, DC 20005                   Tel.: (312) 212-0448
Tel.: (202) 457-0800
aahmad@aclu.org


*Pro hac vice                          Counsel for Plaintiff

## CERTIFICATE OF COMPLIANCE

This document, which is a combined reply and opposition brief, complies with the word limit of Local Rule 7.1(F) because, excluding the parts of the document exempted by the rule, this document contains 8,069 words. This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word 2016 in 14-point Times New Roman.

Date: January 12, 2024                          /s/ Jerry C. Edwards
                                                Jerry C. Edwards